**SO ORDERED**

**SIGNED this 22 day of October, 2024.**

_____
Pamela W. McAfee
United States Bankruptcy Judge

_____

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF NORTH CAROLINA
# FAYETTEVILLE DIVISION

| | |
|---|---|
| IN RE: | |
| | CASE NO. |
| LARRY LAMB | 24-01434-5-PWM |
| MARY GRAHAM LAMB | CHAPTER 13 |
| DEBTORS | |

## ORDER DENYING CONFIRMATION

The matter before the court is the objection to confirmation filed by NewRez LLC d/b/a Shellpoint Mortgage Servicing (Shellpoint). A hearing took place on October 10, 2024, in Raleigh, North Carolina, at the conclusion of which the court took the matter under advisement. For the reasons that follow, the court denies confirmation at this time, without prejudice.

## FACTUAL AND PROCEDURAL BACKGROUND

Larry Lamb and Mary Graham Lamb filed a voluntary petition for relief under chapter 13 of the Bankruptcy Code on April 30, 2024. Among the assets listed on their Schedule A/B is a triple-wide mobile home located in Rose Hill, North Carolina, with a scheduled value of $6,000. D.E. 1 at 11. Schedule D indicates that Shellpoint holds a lien on the mobile home in the estimated

amount of $33,401.57.[1] *Id*. at 26. The Lambs' chapter 13 plan proposes to bifurcate Shellpoint's claim, treating it as secured in the amount of $6,000, payable at 10.5% interest, with the balance treated as a general unsecured claim. D.E. 15 at 3.

On June 12, 2024, Shellpoint filed an objection to confirmation of the Lambs' plan, D.E. 20, contending first that the plan does not address how taxes and insurance will be paid, and second that the proposed value is too low. In the objection, Shellpoint indicated that the principal balance owed on the note is $24,112.98, with a total balance owed as of May 22, 2024 of $33,600.52. Shellpoint attached to its objection a J.D. Power Used Manufactured Home Value Report (the J.D. Power Report) to support its objection to the $6,000 value in the plan. Shellpoint then filed its proof of claim, Claim No. 2-1, on July 9, 2024. The proof of claim included the following notation: "Creditor is filing the Proof of Claim without all supporting loan documentation to preserve the bar date. Creditor is actively working to obtain the Loan Modification and will file an amended proof of claim once the documents are obtained." Claim No. 2-1. The claim has not been amended, but the initial claim did include a copy of the retail installment sale contract dated May 20, 1999, *id*. at 11, and the certificate of title to the 1996 Titan Manufactured Home, VIN 49967630547ABC, reflecting a perfected lien in favor of Shellpoint's predecessor in interest. *Id*. at 16. The claim does not give a value for the mobile home, but it does indicate that the claim of $33,095.13 is fully secured. *Id*. at 2. Because the note matured prepetition, the claim is for the full amount of the outstanding debt.

The confirmation hearing was originally scheduled for July 18, 2024, but was continued in open court at the request of Shellpoint. The confirmation hearing was continued a second time at

---

[1] Schedule A/B also lists the real estate on which the mobile home is located as an asset of the Lambs, but there is no contention that Shellpoint's lien extends to the real estate or that the mobile home is affixed to the real estate.

the request of Shellpoint, D.E. 24, to give Shellpoint an opportunity to conduct an appraisal of the mobile home. When the hearing convened on October 10, 2024, Shellpoint had not had the property appraised.

## DISCUSSION

The court turns first to the standard for valuation of claims secured by personal property. Section 1325(a) sets forth the confirmation requirements in chapter 13. With respect to secured claims, the plan must be confirmed if it provides for payment of "the value, as of the effective date of the plan, of property to be distributed under the plan on account of [an allowed secured] claim." 11 U.S.C. § 1325(a)(5)(B)(ii). "In effect, this allows a debtor to retain a piece of collateral so long as he or she pays the secured creditor the present value of the collateral over the life of his or her chapter 13 plan. This option is colloquially referred to as a 'cram down.'" *In re Edwards*, No. 17-02821-5-SWH, 2017 WL 6754026 at *4 (Bankr. E.D.N.C. Dec. 29, 2017) (citing *In re Martin*, 444 B.R. 538, 545 (Bankr. M.D.N.C. 2011).

"Under the cram down option, which is set forth in Section 1325(a)(5)(B), 'the debtor is permitted to keep the property over the objection of the creditor; the creditor retains the lien securing the claim, . . . and the debtor is required to provide the creditor with payments, over the life of the plan, that will total the present value of the *allowed secured claim* . . ..'" *Hurlburt v. Black*, 925 F.3d 154, 159 (4th Cir. 2019) (en banc) (quoting *Associates Comm. Corp. v. Rash*, 520 U.S. 953, 957 (1997)); 11 U.S.C. § 1325(a)(5)(B). In other words, "the cram down option in § 1325(a)(5)(B) allows a debtor to limit payment on a secured creditor's claim to the present value of the underlying collateral and treat the remainder as a separate unsecured claim 'paid at the same percentage as general unsecured creditors, and discharged if the plan payments are completed.'"

3

*In re Gillis*, No. CV 24-01835-EG, 2024 WL 4434551, at *4 (Bankr. D.S.C. Oct. 4, 2024) (quoting *In re Eaddy*, No. 15–05744–DD, 2016 WL 745277, at *4 (Bankr. D.S.C. Feb. 23, 2016)).

Accordingly, when a debtor seeks to cram down a claim, the court must determine the value of the allowed secured claim, which in turn requires a determination of the value of the collateral under § 506(a). Here, because the collateral is personal property, the court applies § 506(a)(2), which provides:

> If the debtor is an individual in a case under chapter 7 or 13, such value with respect to personal property securing an allowed claim shall be determined based on the replacement value of such property as of the date of the filing of the petition without deduction for costs of sale or marketing. With respect to property acquired for personal, family, or household purposes, replacement value shall mean the price a retail merchant would charge for property of that kind considering the age and condition of the property at the time value is determined.

11 U.S.C. § 506(a)(2). Replacement value should represent the "cost the debtor would incur to obtain a like asset for the same 'proposed . . . use[,]'" *Rash*, 520 U.S. at 965, or, under the statute, the retail value of like property considering the age and condition of the property in question. As the Supreme Court held in *Rash*, bankruptcy courts, as triers of fact, are to identify "the best way of ascertaining replacement value on the basis of the evidence presented." *Edwards*, 2017 WL 6754026 at *4 (construing *Rash*, 520 U.S. at 965 n.6).

Because Shellpoint timely objected to confirmation, the court conducted an evidentiary hearing to determine the correct value of the mobile home and corresponding security interest amount for purposes of cram down under § 1325(a)(5)(B). It is well established that "valuation of personal property is conducted on a case-by-case basis." *In re Sweeney*, 556 B.R. 208, 216 (Bankr. E.D.N.C. 2016) (construing *In re Hardy*, No. 15-05431-5-JNC, 2016 WL 3549078, *2-3 (Bankr. E.D.N.C. June 21, 2016)). Where the parties cannot agree on actual value, and in the absence of expert testimony, "the court would ordinarily start with the NADA value less adjustment for costs

4

of necessary repairs, and plus the value of additions to the vehicle or mobile home." *Hardy*, 2016 WL 3549078 at *2-3 (relying on *In re Russell*, 211 B.R. 12 (Bankr. E.D.N.C. 1997)). The NADA value is a generally accepted price estimate for a vehicle published by the National Association of Automobile Dealers. Courts use the NADA as a starting point for a manufactured home's replacement value, but the NADA value is not binding or conclusive, and courts make adjustments based on the evidence presented in the case to arrive at their own replacement value. *Id.*

In this case, as discussed below, the parties cannot agree on the actual value, leaving that determination to the court. Because there was no expert testimony, the NADA value was not provided, and the Lambs objected to the court's consideration of the J.D. Power Report for any purpose, the court's points of reference are limited.

### I.    Evidence Before the Court

Mr. Lamb appeared at the hearing to testify about the condition of the mobile home and his opinion, as the owner, of the value of the home.[2] He testified that the home was not new when it was purchased in 1999. It is not on a foundation, despite his understanding when it was purchased that it would be placed on a foundation. Over time, the blocks on which the home is mounted have settled. He testified that the A-top roof has detached from the top of the house and the windows and doors have been damaged from the settling of the building. Neither the heat nor air conditioning are operable, and the estimated cost to repair them is $7,000. One or two of the windows are broken. The deck on the back side of the house is level with the interior floor, so that water comes through the door when it rains. The wood has deteriorated and rotted. There are leaks in the roof, and the floors are damaged from the leaks coming through the ceiling. Mr. Lamb does

---

[2] Mr. Lamb's "testimony detailing the current *condition* of the Manufactured Home is relevant, useful, and credible, as []he resides in the Manufactured Home and is acutely aware of its condition." *Sweeney*, 556 B.R. at 217.

his best to cover the roof with plastic and felt paper to stop the leaks, but the "roof is in bad shape" and with each new leak, he has to climb on top of the roof to try to repair it. Mr. Lamb is an amputee, and climbing a ladder to make roof repairs is difficult at best. Mr. Lamb testified that he was not aware of other mobile homes in his area that were for sale, nor had he tried to sell his, but he believes that the value of his mobile home is $6,000.

While not directly related to value, Mr. Lamb also testified that he does not understand why he continues to pay for the mobile home, as it was a 20-year note beginning in 1999. He acknowledged that he had a number of hospitalizations that disrupted his ability to make regular payments. The pay history attached to the proof of claim shows that the Lambs first missed or made a late payment on November 15, 2016, Claim No. 2-1 at 5.

On cross-examination, Shellpoint presented Mr. Lamb with black and white photographs that Mr. Lamb confirmed were accurate representations of his home. There was no testimony regarding the photographs beyond agreement that they were photos of the mobile home in question. The source of the photographs is unknown to the court, but they were admitted into evidence without objection. The photographs corroborate Mr. Lamb's testimony that the roof leaks, that there is water damage on the ceiling and walls, and that the heating and air conditioning units – to the extent one can tell from a photograph – are damaged or in ill repair. The photographs also show that the bathroom sink is edged in duct tape, but there is not much else to be gleaned from the photos without any further explanation.

Shellpoint relied on the photographs and the J.D. Power Report to establish that the mobile home is worth more than $6,000. Mr. Lamb objected to the admissibility of the J.D. Power Report as hearsay and without foundation. The court did not rule on the objection, instead reserving the issue for later consideration. That delayed ruling did not affect the introduction of any further

6

evidence, as there was no examination related to the J.D. Power Report and thus no other potentially relevant evidence that was either considered or excluded. Shellpoint did not reference the J.D. Power Report's conclusions in its closing argument but noted that it is objective evidence of value, and conceded that the J.D. Power Report's value is likely too high.

## II.     Burden of Proof

The parties did not address the burden of proof at the hearing. Courts disagree as to which party bears the burden of proof on the value of collateral for purposes of confirmation of a chapter 13 plan, but the seeming majority of cases holds that the debtor has the burden of proof on every element of confirmation, including valuation. There is, however, a line of cases that views the inclusion in a debtor's plan of a value lower than that in the creditor's proof of claim as invoking the claims-allowance process, which, assuming the evidence is sufficient to rebut the presumptive validity of the claim, shifts the burden back to the creditor.

Recently, Judge Gasparini of the United States Bankruptcy Court for the District of South Carolina held that "'[t]he ultimate burden of proof regarding a motion to value a secured claim and the confirmation of a chapter 13 plan is on the debtor by the preponderance of the evidence.'" *Gillis*, 2024 WL 4434551, at *5 (quoting *In re Lloyd*, No. 18-02936-jw, 2018 WL 6984813, at *7 (Bankr. D.S.C. Nov. 19, 2018)). Judge Gasparini surveyed a number of other courts, predominantly within the Fourth Circuit, in reaching that decision. *Id.*; *Lloyd*, 2018 WL 6984813, at *7; *In re Brown*, 244 B.R. 603, 607–10 (Bankr. W.D. Va. 2000) (holding that burden is on the debtor by the preponderance of the evidence in context of an objection to valuation in a proposed chapter 13 plan); *In re Keels*, 661 B.R. 929, 933 (Bankr. D. Md. 2024) (concluding that debtor bears the burden of proof on valuation for purposes of § 506(a)); *In re Maplethorpe*, 569 B.R. 157,

7

159 (Bankr. E.D. Mich. 2017) (holding debtor-plaintiffs must satisfy preponderance of evidence standard in context of Rule 52(c) motion pertaining to § 506(a)(1) valuation).

However, as acknowledged in *Gillis*, some courts consider the dispute to be one of claims allowance, rather than plan confirmation. *Gillis*, 2024 WL 4434551, at *5 n.15 (citing *Eaddy*, 2016 WL 745277, at *4 n.16 (noting disagreement among courts as to whether the burden-shifting analysis that applies when determining the amount of an allowed claim in the claim objection context should also apply when issues of valuation arise in the chapter 13 confirmation context)). The *Eaddy* court explained the differing approaches as follows:

> Although the debtor generally bears the burden of proof on the elements of confirmation, confirmation of the plan when there is a dispute over the value of collateral "implicates claim allowance" because it requires a determination of the value and extent of a secured claim. *In re Coleman,* 373 B.R. 907, 911–13 (Bankr. W.D. Mo. 2007) (superseded by statute on other grounds). Most courts, including this one, utilize a burden-shifting framework when determining the amount of a claim. *Stancill v. Harford Sands Inc. (In re Harford Sands Inc.),* 372 F.3d 637, 640 (4th Cir. 2004). First, based on the language in section 502(a) ("A claim ... is deemed allowed ... unless a party ... objects") and Fed. R. Bankr. P. 3001(f) ("A proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim"), the proof of claim is presumptively valid. The party objecting to the amount of the debt "must introduce evidence to rebut the claim's presumptive validity." *In re Gregg,* 528 B.R. 645, 651 (Bankr. D.S.C. 2014). The creditor bears the ultimate burden by the preponderance of the evidence in proving both the amount and validity of the claim. *Id. . . .* **Courts disagree whether this same burden-shifting should apply when issues of value arise in the chapter 13 confirmation context**. *In re Tucker,* Case No. 12–53285–JDW, 2013 WL 3230615, at *3 (Bankr. M.D. Ga. June 25, 2013) (slip copy) (collecting cases).

*Eaddy*, 2016 WL 745277, at *4 n.16 (emphasis added). The burden-shifting approach has been applied in this district. *Hardy*, 2016 WL 3549078, at *1 (where creditor filed a secured proof of claim listing the claim as fully secured and debtor's plan asserted a lower value, the "burden of persuasion shifted back to the Creditor.").

8

It is plain that both approaches find support in the Bankruptcy Code, Rules, and case law. In this case, where neither party presented any objective evidence of value, the allocation of burden of proof is outcome-determinative. Accordingly, the court has considered the reasoning behind both approaches, and considered comparable situations – other than claims objections – where the value of collateral, and thus the amount or allowance of a secured claim, is at issue. For example, chapter 13 debtors may strip wholly unsecured consensual liens where there is no value to support the lien. There, "[t]he Debtor bears the burden of proof on valuation for purposes of sections 506(a) and 1322 of the Code." *In re Keels*, 661 B.R. 929, 933 n.7 (Bankr. D. Md. 2024); *see In re Johnston*, No. 12-51263, 2013 WL 1844751 at *3-5 (Bankr. W.D. Va. Apr. 12, 2013) (holding that a debtor must prove by a preponderance of the evidence that they are entitled to strip a valueless lien under § 506); *see also Schaffer v. Weast*, 546 U.S. 49, 51, 56-57 (2005) (holding that the burden of proof generally rests on the party seeking relief)). Similarly, chapter 11 debtors have the burden of proof on all confirmation issues. *See In re Bate Land & Timber, LLC*, 523 B.R. 483 (Bankr. E.D.N.C. 2015) (holding that where debtor sought to surrender a portion of the creditor's collateral in full satisfaction of the debt, which required valuation of the property to be surrendered, the *debtor's* appropriate standard of proof under both § 1129(a) and in a cram down is preponderance of the evidence), *aff'd,* 877 F.3d 188 (4th Cir. 2017).[3]

Perhaps most analogous to this case, based on how the parties presented their evidence, and most persuasive to this court in its analysis, is the discussion in *In re Brown*, 244 B.R. 603 (Bankr. W.D. Va. 2000), which involved valuation of a purchase money security interest in furniture and household goods. The *Brown* court limited its conclusion – that the burden of proof

---

[3] The reference to "cram down" in *Bate Land* is not the situation before this court, where the debtor seeks to bifurcate the claim into secured and unsecured components, but instead refers to confirmation under § 1129(b), which applies when not all impaired classes have accepted the plan.

9

on valuation for purposes of chapter 13 confirmation lies with the debtor – to the purchase money context, but the *Brown* analysis is equally applicable in the matter at hand. The *Brown* court first identified sections of the Bankruptcy Code where the burden of proof on value is specifically allocated to the secured creditor, such as to establish cause for relief from the automatic stay under § 362(d), and observed that

> [i]n the context of collateral valuation for Plan confirmation purposes where the debtor proposes to retain the collateral, however, the economic incentives motivating the parties are reversed from those present in a creditor's relief from stay motion. The creditor wants the highest valuation possible in the Plan because that will maximize its recovery under the Plan. The debtor wants the lowest valua[tion] possible because his payments into the Plan must absolutely be enough to provide to the holders of the allowed secured claims the present value of such claims.

244 B.R. at 609.

Reiterating the rule that the debtor has the burden of proof to establish that he or she meets the requirements for confirmation, the *Brown* court then considered the six requirements for confirmation set forth in § 1325(a), among which is that the holder of "each allowed secured claim" receive cash payments or other property having a present value equal to "the allowed amount of such claim." *Id.* (citing 11 U.S.C. § 1325(a)(5)(B)(ii)). To determine the amount of the allowed claim, and thus whether the payments equal that amount, the value of the collateral must be established. *Id.*

> In its thorough and well-reasoned discussion, the *Brown* court observed:

> If no creditor objects, the debtor has the equivalent of a default judgment on this issue and the case may proceed to confirmation based on the representations under oath contained in the petition and without additional evidence. If the creditor *does* object, however, the debtor is in effect "put to its proof" and is obligated to produce satisfactory evidence. If the debtor has the burden of proof on this issue, it cannot be shifted to the creditor upon the proposition that a party objecting must establish its objection. *See Tillman v. Lombard,* 156 B.R. 156 (E.D. Va. 1993) (Smith, J.) ("The interposition of an objection to confirmation

10

> surely does not relieve the Chapter 13 debtor from the ordinary burden of proving the right to bankruptcy relief." 156 B.R. at 159.)

*Id.* (emphasis added). On that issue, the court concluded that

> the issue of collateral valuation is a necessary part of one of the six requirements for plan confirmation under § 1325(a). If the debtor contends that the value of a creditor's collateral is worth less than the amount owed to that creditor, in the context of a situation where the debtor in effect is acquiring or retaining that collateral at a price equal to the value set out in the Plan, it is entirely fitting and proper that the debtor should have the burden of proof to establish such value . . . .

*Id.* at 610. Further, as a matter of policy, the court noted that the ability to modify a claim to the value of collateral is relief available only through the Bankruptcy Code, and that where the creditor's rights are being reduced, "it seems appropriate that the burden of proof in such a situation should be placed upon the party benefitting from the process, *i.e.*, the debtor." *Id.* at 610-11.

Finally, the *Brown* court rejected the burden-shifting approach of claims determination, noting that the issue of valuation for cram down purposes differs in kind from an objection to the validity of a debt or security interest or the amount of the debt, both because validity and amount are elements of a claim relevant in any forum where the creditor seeks to enforce its rights and because the issue is *establishing* enforceable rights, as opposed to modifying rights, as provided by the Bankruptcy Code. *Id.* at 610.

This court finds the reasoning in *Brown* to be persuasive support for allocating the burden of proof to the debtor. Here, the debtors seek, through their chapter 13 plan, to modify Shellpoint's contractual right to recover the full balance of its debt to instead receive only the value of the collateral. The Bankruptcy Code allows that relief, but it also requires the debtors to establish that the plan provides for payments equal to the value of the collateral. That burden should not be shifted simply because Shellpoint objected and requested that the debtors prove the confirmability of their plan.

11

### III. Evaluation of the Evidence in Light of the Burden of Proof

As described above, the evidence presented to the court consists of the J.D. Power Report, some photographs of the property, and the testimony of Mr. Lamb. Mr. Lamb objected to the admission of the J.D. Power Report. While court will admit Shellpoint's proffered J.D. Power Used Manufactured Home Value Report into evidence, the report is of limited assistance to the court's determination of value, for many reasons. There was no witness to explain why the "average" condition selection was applicable to this mobile home, or even what the description of "average" is for J.D. Power; nor were there any values provided for other conditions of the mobile home so that the court had a baseline to work with if it were to disagree with the "average" condition characterization. Shellpoint conceded that the value in the tendered J.D. Power Report is likely higher than the actual value of the Lambs' mobile home, but argued that the actual value is "not anywhere near the value Mr. Lamb put in his plan."

At the same time, the debtors' evidence of value likewise is of limited utility to the court, and this ultimately matters more – indeed, it is dispositive at this point – because the Lambs have the burden of proof to establish value by the preponderance of the evidence. "To have the burden of proof by a preponderance of the evidence means the obligation to present evidence that makes the fact in issue 'to appear more likely or probable in the sense that actual belief in its truth, derived from the evidence, exists in the mind . . . of the tribunal notwithstanding any doubts that may still linger there.'" *Brown*, 244 B.R. at 612 (citations omitted).

Mr. Lamb contends that his testimony is uncontroverted and there is nothing before the court to contradict his valuation of $6,000. Even uncontradicted testimony, however, "must be subject to the same type of critical analysis as would the testimony of an independent 'expert.'" *Id.* While Mr. Lamb carefully and credibly detailed the condition of the mobile home, and the court

12

accepts as true all of his statements as to its condition, he gave no explanation of how he arrived at the $6,000 value.

In *Brown*, the sole evidence before the court was the testimony of the owner of the property – there, household goods and furniture. Like the court in *Brown*, this court finds that Mr. Lamb was competent to testify and that his testimony is credible. However, also like the *Brown* court, this court finds that the testimony, while uncontroverted, still was "insufficient to establish in the Court's mind an 'actual belief … derived from the evidence' as to the validity of the valuation opinion and thereby carry the Debtors' burden of proof." *Id.* Put another way, it is not so much that the $6,000 value is clearly wrong, but rather that the court cannot discern any basis for that figure.

The court emphasizes that assigning the burden of proof to the debtor is not intended to impose excessive administrative costs on a chapter 13 debtor. To the contrary: the debtor may and often should testify as to his opinion of value, and that may in appropriate cases be sufficient, but that opinion must be anchored to something. Whether that "something" is an objective NADA or other value that is subject to adjustment based on a debtor's testimony about the condition of the home in question, or effective cross-examination of an objecting party's appraiser where proffered, or the debtor's efforts to determine the retail price of a similar home (which the court recognizes may not be practical for the mobile home in this case), or some other evidentiary approach, will vary from case to case.[4] What these approaches all must have in common is a clearly articulated rational basis for the valuation presented.

---

[4] It is well-established in this district that a debtor may not rely on tax value as the basis for an opinion on value. *See Sweeney*, 556 BR at 217, *citing McDuffie v. West (In re West)*, Case No. 5:15-CV-557-FL, 2016 WL 4186853 (E.D.N.C. July 15, 2016) (holding that "testimony based solely on a tax assessment prepared by a third-party is not an opinion 'rationally based on the [homeowner's] perception,' thus running afoul of Federal Rule of Evidence 701").

13

## CONCLUSION

Because the court finds that the debtors have failed to meet their burden of proof as to the value of the mobile home for purposes of § 1325(a)(5)(B)(ii), the objection to confirmation is SUSTAINED, and confirmation is DENIED WITHOUT PREJUDICE.

**END OF DOCUMENT**